**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: December 21 2015

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 14-33951 |
| | ) | |
| Liselotte G. Wandscher, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 15-3016 |
| | ) | |
| International Brass Works, Inc., | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Liselotte G. Wandscher, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION**

This adversary proceeding is before the court for decision after trial on a complaint filed by Plaintiff International Brass Works, Inc. ("IBW") to determine dischargeability of a debt it is owed by Defendant Liselotte G. Wandscher, the debtor in the underlying chapter 7 case. IBW alleges that the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6).

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine

dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. § 157(b)(1) and (b)(2)(I). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant is entitled to judgment on the complaint.

## FINDINGS OF FACT

IBW is a small manufacturer of architectural metal work located in Blissfield, Michigan. Alex Campbell, president of the company, purchased IBW in 2005. Defendant had worked for the prior owners since 2002. Her duties included general secretarial duties, answering telephone calls, and general bookkeeping duties, which included entering the payroll. The former owners handled all financial matters, signed all checks, and made all financial decisions. Defendant has no accounting background.

After Campbell's purchase of the company, the first and only shareholders meeting and directors meeting were held on December 27, 2005. [*See* Pl. Ex. 1]. On that date, Campbell executed a "Transfer of Shares" indicating that he was transferring 1,000 shares of stock to Defendant and to his wife, leaving him with 19,000 shares. [*Id.* at 5-6]. At the shareholders meeting, Campbell and Defendant were elected directors of IBW. [*Id.* at 5]. At the directors meeting that took place immediately thereafter, Campbell was elected President, Campbell's wife was elected Vice President and Secretary, and Defendant was elected Treasurer and Chief Financial Officer ("CFO"). [*Id.* at 3]. Some time thereafter, Campbell gave the title "CEO" to Sherry Carter, who he described as a friend who was helping out and wanted a title.

After Campbell obtained total control of the company, Defendant was given additional duties that included generating invoices, handling accounts receivable and accounts payable, and generating monthly profit and loss statements from a computer program and operating system that had been in place under the prior ownership of the company. Other duties given to Defendant included preparing the payroll and filing payroll withholding tax returns. Although Defendant had authority to sign checks in "small amounts," which she described as under $200, checks for larger amounts were prepared by her for Campbell's signature. Campbell provided no instructions to Defendant regarding performance of her additional duties. Campbell testified that he was not aware of any special education that Defendant had in order to function as CFO and conduct the financial affairs of the company but she had been with the company for two years before he purchased it and, therefore, he considered her well-established in running the financial aspects

2

of the business.

According to Campbell, he had an excellent relationship with Defendant and she did a "wonderful" job until IBW began having serious cash flow issues. By at least 2012, the cash flow problems caused a great deal of difficulty in paying bills and meeting payroll obligations. Text messages were frequently exchanged between Campbell and Defendant regarding the shortage of cash and how to handle the shortage in IBW's bank account, [*See* Def. Ex. A], with Defendant conveying how upset she was about the situation and, on one occasion, offering to pay a supplier by using her personal credit card and, on another occasion, stating that she would not cash her paycheck, [*id* at 3, 4, 17, 22]. Campbell confirmed that he knew about the difficulty in paying IBW's vendors and suppliers and that Defendant was "sometimes good enough to hold her paycheck" for several days because of insufficient funds in IBW's account.

The court credits Defendant's testimony that, during the time period of the cash flow shortages, Campbell instructed her, and it was a common practice, to write checks to vendors and then hold them until there was money in the account. In addition to vendors not being timely paid and difficulties in meeting payroll, Defendant testified that she was unable to make all of the required weekly deposits of payroll withholding taxes due to insufficient funds to do so. Her testimony is consistent with that of Thomas Boldt, the certified public accountant engaged by IBW in July 2013. Boldt testified that IBW was insolvent when he began his work for it and that it was very possible that there was no money for Defendant to make the weekly tax deposits.

According to Boldt, in order to prepare IBW's income tax return for its tax year ending September 30, 2013, a substantial amount of accounting work had to first be completed in order to verify balances and reconcile bank accounts, accounts receivable and accounts payable. He testified that items were still being carried as payable or receivable that had already been paid or received and that a number of payroll tax payments had been recorded but not paid. He further testified that a number of Form 941 returns for federal employment taxes, which Defendant normally filed, had not been submitted.

Campbell testified that he was not aware of the non-payment of state payroll taxes until the summer of 2013 when a representative of the State of Michigan came to IBW to discuss the unpaid taxes. Although Campbell testified that he was also unaware of the issue regarding Form 941 federal tax returns not being filed, the court credits Defendant's testimony that in her discussion with him after the Michigan state representative left, she told Campbell that none of the payroll taxes were being paid because there were no funds to pay them. Defendant did not distinguish a difference between filing the tax returns and paying the taxes, as she credibly testified that "to me, being paid and being filed is the same thing." When asked why

3

he had been unaware of the inability to pay the taxes, Campbell testified that he spent most of his time providing estimates and getting work orders and that he trusted the handling of financial matters to Defendant.

As a result of the failure to file federal payroll tax returns and failure to pay the payroll taxes, IBW was assessed penalties and interest in the total amount of $39,951. Campbell appealed the assessment and testified at trial that he was recently notified that the entire amount has been abated. In addition, the Internal Revenue Service Appeals Office determined that it "should not hold [Defendant] personally liable for the non-payment of the trust fund liabilities. . . ." [Def. Ex. C]. IBW incurred legal fees in appealing the tax assessment and Boldt's accounting fees for preparing its tax return and the accounting work completed in order to do so.

In September 2013, Campbell told Defendant that he and his wife were considering moving back to Canada and leaving everything behind. Thereafter, Defendant accepted a job offer elsewhere and left her employment at IBW.

## LAW AND ANALYSIS

IBW seeks a determination that Defendant owes it a debt for misrepresentations allegedly made in connection with her duties as its CFO and for her failure to properly perform those duties that is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). A creditor must prove exceptions to dischargeability for individual debts under 11 U.S.C. § 523(a), including the exception for fraud, by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291(1991). Exceptions to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998). For the reasons that follow, the court finds that IBW has not met its burden of proving nondischargeability of any debt owed by Defendant.

### I. 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services,. . . to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." 11 U.S.C. § 523(a)(2)(A). In order to except a debt from discharge under this section due to false pretense or false representation, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was

4

15-03016-maw    Doc 21    FILED 12/21/15    ENTERED 12/21/15 15:17:48    Page 4 of 7

the proximate cause of loss. *Rembert,* 141 F.3d at 280-81.  A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand.  *Id.* at 281-82.

The only evidence offered of a misrepresentation by Defendant is Boldt's testimony that a number of payroll tax payments had been recorded but not paid and Campbell's testimony that he was unaware of the nonpayment of state payroll taxes and the failure to file federal payroll tax returns until the summer of 2013.  With respect to the recording of tax payments, there is no evidence that Campbell ever looked at those entries and thus no evidence that he relied upon them as representations that the taxes were paid.  The court also does not believe that Defendant recorded the payments with the intent to deceive.  Although Boldt testified that the payroll tax payments had been recorded, the record is silent as to where they were recorded.  To the extent they were recorded in IBW's checkbook, she was instructed by Campbell, and it was Defendant's common practice, to write checks and then hold them until there was money in the account to cover the check.  Presumably checks would be recorded when written.  To the extent recorded in other of IBW's business records, the court believes such would be more likely than not due to Defendant's lack of accounting skills and training.  In any event, IBW has failed to prove that Defendant acted with fraudulent intent in recording the tax payments that were not made.

With respect to Campbell being unaware of the company's nonpayment of state payroll taxes and the failure to file federal payroll tax returns, the court does not believe Defendant's failure to inform him of these facts to be fraudulent.  Campbell testified that he never questioned Defendant regarding preparing tax returns. While a failure to disclose material facts, where there is a duty to disclose, may constitute a misrepresentation under § 523(a)(2)(A), *see Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082, 1089 (9th Cir.1996)*; Rowe v. Steinberg (In re Steinberg)*, 270 B.R. 831, 835 (Bankr. W.D. Mich 2001), given the financial condition and cash flow problems of IBW in 2012 and 2013, of which Campbell was well aware, he should have known that there were insufficient funds to pay the taxes.  The court finds that any reliance on Defendant's silence regarding the nonpayment of taxes to be unjustified.  And having left such matters to Defendant, who had no formal schooling or training in accounting and tax matters, Campbell should have, at a minimum, inquired of Defendant as to whether the tax returns had been filed. As far as Defendant understood, filing the returns and paying the taxes were indistinguishable acts.  The court finds no evidence of the intent to deceive by Defendant's silence.  Text message communications made clear that her focus, as well as Campbell's focus, was on paying vendors and meeting payroll in order for the business to continue.  The lack of any fraudulent intent is underscored by her willingness to pay a

supplier by using her own personal credit card and offering to delay cashing her paycheck when there was a shortage of cash in IBW's account. Defendant is entitled to judgment on IBW's § 523(a)(2)(A) claim.

## II. 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). IBW does not rely on the embezzlement or larceny provision in support of its claim. Rather, it is IBW's position that Defendant was a fiduciary in her capacity as CFO and failed to perform her duties in that capacity.

Whether a party acted in a "fiduciary capacity" for purposes of § 523(a)(4) is determined by federal, not state law. *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005). The Sixth Circuit construes "fiduciary capacity" as used in § 523(a)(4) more narrowly that the term is used in other circumstances. *Id*. In order to trigger the fraud or defalcation provision in that statute, a debtor must hold funds in a trust for the benefit of a third party. *Id.* (citing *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)). Furthermore, the types of trusts that will trigger the fraud or defalcation provision of § 523(a)(4) are "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id*. Thus, "the mere failure to meet an obligation while acting in a fiduciary capacity does not rise to the level of defalcation; an express or technical trust must also be present." *Id.*

While it may be true that the directors and officers of a corporation owe a fiduciary duty to the corporation, *see Ronk v. Maresh (In re Maresh)*, 277 B.R. 339, 348 (Bankr. N.D. Ohio 2001); Ohio Rev. Code § 1701.59(B); Mich. Comp. Laws Serv. § 450.1541a.(1)(LexisNexis 2015); *Frost & Co., Inc. v. Smithey (In re Smithey)*, 474 B.R. 830, 842 (Bankr. N.D. Ohio 2012); such a fiduciary relationship is insufficient to establish the trust relationship required under § 523(a)(4). *See Maresh,* 277 B.R. at 348-50 (finding that a director's fiduciary duty under Ohio Rev. Code § 1701.59(B) is not a trust relationship for purposes of § 523(a)(4)). Defendant is entitled to judgment on IBW's § 523(a)(4) claim.

## III. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In order to be entitled to a judgment that the debt is excepted from discharge, a plaintiff must prove that the injury from which the debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-2 (Bankr. N.D. Ohio 2001).

A willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the

6

actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing *Markowitz*, 190 F.3d at 464). Under § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Stated differently, "[t]here must also be a consciousness of wrongdoing. . . . It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *Kraus Anderson Capital, Inc. v. Bradley (In re Bradley),* 507 B.R. 192, 204 (B.A.P. 6th Cir. 2014) (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

In this case, IBW has failed to show that Defendant desired to cause it harm or that she believed that harm would result by her recording of tax payments before the taxes were paid and by her failure to specifically inform Campbell that certain payroll taxes had not been paid and tax returns had not been filed. Although IBW incurred attorney fees in appealing the assessment of penalties and interest as a result of the failure to file payroll tax returns and pay payroll taxes, the record is silent as to Defendant's understanding that penalties would be imposed when tax returns were not timely filed and that interest would accrue on unpaid taxes. Defendant had no accounting background, and IBW has failed to show that Defendant had sufficient knowledge such that she would have been aware of the consequences of her actions and her failure to inform Campbell of the status of the tax returns.

The court also finds no evidence that Defendant acted with the intent of causing IBW to incur substantial accounting fees. Those fees were incurred, in large part, due to Defendant's method of handling IBW's financial matters. IBW has failed to show that Defendant was qualified to handle its financial matters in the first place or that she was even aware of the fact that her methods were inadequate. It has thus failed to prove that Defendant intended to cause it to incur such fees or that Defendant believed that such fees were substantially certain to result from her method of handling IBW's financial matters. IBW has thus failed to prove that any injury sustained by it was willful and malicious. Defendant is entitled to judgment on IBW's § 523(a)(6) claim.

### **CONCLUSION**

IBW having failed to satisfy its burden of proof under § 523(a)(2)(A), (a)(4) and (a)(6), Defendant is entitled to judgment in her favor on the complaint. The court will enter a separate judgment in accordance with this Memorandum of Decision.

###